UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.

15-CU-465-ORL-18GJC

ALETHA K. MACKIEWICZ,

       Plaintiff,

vs.

NATIONSTAR MORTGAGE, LLC,

       Defendant.

_____/

## COMPLAINT

Plaintiff, Aletha K. Mackiewicz (also known as Aletha Kelley Mackiewicz), (hereinafter "Plaintiff") sues Defendant, Nationstar Mortgage, LLC (hereinafter "Nationstar") and for her complaint alleges:

1. This is a complaint for monetary damages.

2. The Defendant violated the Telephone Consumer Protection Act (TCPA) 47 USC § 227, *et. seq.* and its implementing regulations at 47 C.F.R. § 64.1200, *et. seq.,* the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., (hereinafter FDCPA), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. (hereinafter "FCCPA").

I
PARTIES

3.   The Plaintiff is a natural person and citizen of Brevard County, whose principal residence is located at 207 Pierce Avenue, Cape Canaveral, Florida 32920.

4.   Defendant Nationstar Mortgage, LLC is a registered foreign limited liability company in Florida with a principal place of business at 8950 Cypress Waters Boulevard, Coppell, TX 75019.  Its registered agent for service of process is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.  Defendant is registered in the state of Florida as a Consumer Collection Agency (License #: CCA9902750; License Main Address: 2617 College Park Drive, Scottsbluff, Nebraska 69361)

II
JURISDICTION AND VENUE

5.   This Court has jurisdiction to grant relief pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §1331, 47 U.S.C. §227(b)(3) and 28 U.S.C. § 1367.

6.   The Defendant transacts business in the State of Florida.  The conduct complained of which gives rise to the causes of action occurred in the County of Brevard.  Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1391(b)(2) and (c), as the claims arose from acts of Defendants perpetrated therein.

III
COMPOSITE EXHIBITS

7.   Attached to this Complaint are Composite Exhibits.  The Composite Exhibits are incorporated and made a part hereof as Composite Exhibit "A" and are given Bates

numbers on the bottom of each page.  Any reference made to Composite Exhibit "A" shall

be as follows: "Composite Exhibit "A" page ___"

## IV
## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8.  All conditions precedent to the bringing of this action have been performed, waived or

excused.

9.  Plaintiff's cellular telephone number is 321-543-8498.

10. On September 4, 2002, Plaintiff obtained a mortgage loan from Bank of America, N.A.

which loan was secured by her homestead residence.  (The "Subject Debt") (Composite

Exhibit A, pages 6 - 8 (Note), Pages 10 - 18 (Mortgage))

11. On July 24, 2013, Plaintiff defaulted on the Subject Debt. (Composite Exhibit A, page 2,

paragraph 9)

12.  On August 2, 2013, the defaulted debt was assigned for collection from Bank of America,

N.A. to Nationstar Mortgage, LLC (Composite Exhibit A, page 9)

13. On December 26, 2013, the defaulted debt was assigned for collection from Nationstar

Mortgage, LLC to U.S. Bank, as Trustee for the Holders of the Banc of America Funding

Corporation , 2008-FT1 Trust, Mortgage Pass-Through Certificates, Series 2008-FT1

(hereinafter "US Bank").  (Composite Exhibit A, page 27)

14. On January 15, 2014, U.S. Bank filed suit against Aletha Kelley Mackiewicz aka Aletha K.

Mackiewicz in foreclosure. (Composite Exhibit A, pages 1 - 26) (hereafter the "foreclosure

action") The foreclosure complaint sought damages in addition to foreclosure of the mortgage. The "Wherefore" clause sought a judgment enumerating all amounts due under the Subject Debt and a deficiency decree. (Composite Exhibit A, page 4)   Nationstar Mortgage, LLC verified, under penalty of perjury, the truth of the facts alleged in the foreclosure complaint as attorney-in-fact for US Bank.

15. On February 14, 2014, Aletha K. Mackiewicz's attorney in the foreclosure action filed a Motion to Dismiss and served it on counsel for US Bank. (Composite Exhibit A, pages 28 - 29)

16. Counsel for US Bank in the foreclosure action was an agent of US Bank. Notice to US Bank's counsel was notice to US Bank. On information and belief, US Bank's counsel notified US Bank of activity occurring in the foreclosure action, including providing notice to US Bank with notice that Aletha Mackiewicz had counsel and to cease contact with her.

17. On March 5, 2014, counsel for Aletha K. Mackiewicz sent, and Nationstar Mortgage, LLC received, a facsimile letter marked URGENT demanding Nationstar cease all attempts to communicate directly with Ms. Mackiewicz regarding the Subject Debt (hereinafter the "Cease Contact Demand"). (Composite Exhibit A, pages 30 - 32)

18. Between March 6, 2014 and March 5, 2015, Nationstar, without consent and in defiance of the Cease Contact Demand, caused Plaintiffs cellular telephone to be called hundreds of times.

19. On March 28, 2014, Defendant Nationstar sent an email directly to Plaintiff with a link for viewing Nationstar's electronic mortgage statement. (Composite Exhibit A, page 33)

20. On May 21, 2014, Defendant Nationstar sent a letter directly to Plaintiff. The letter stated $2,973.86 would be added to the Subject Debt, in the future, for post-acceleration, forced placed insurance expenses.  (Composite Exhibit A, pages 34 - 35)

21. On July 29, 2014, Defendant Nationstar sent an email directly to Plaintiff with a link for viewing Nationstar's electronic mortgage statement.  (Composite Exhibit A, page 36)

22. On September 11, 2014, US Bank was granted a final judgment foreclosing the Subject Debt (hereinafter "Final Judgment"). The Final Judgment awarded US Bank the sum of $79,483.92 plus interest at the rate established by Florida Statutes Section 55.03(1)[1] from the date of the Final Judgment until paid; ordered US Bank to advance all post-Final Judgment costs with reimbursement for same to be made from the Clerk of Court (if US Bank was not purchaser at sale) or from credit by the Clerk of Court (if US Bank purchased the property by credit bid at sale); ordered Ms. Mackiewicz' property be sold on December 11, 2014 to pay the Final Judgment; and reserved jurisdiction to enter a deficiency judgment. (Composite Exhibit A, pages 37 - 41)   As such, the relevant promissory note and mortgage merged into the Final Judgment and lost their independent, prejudgment identity. *Weston Orlando Park, Inc. v. Fairwinds Credit Union*, No. 5D11–2260 (Fla. 5th DCA 2012); *Diamond R. Fertilizer Co., v. Lake Packing P'ship*, 743 So. 2d 547, 548 (Fla. 5th DCA 1999); see *Vernon v. Serv. Trucking, Inc.*, 565 So. 2d 905, 906 (Fla. 5th DCA 1990) ("[A] debt reduced to final judgment merges into the final judgment and loses its prejudgment identity."); *Nack Holdings, LLC v. Kalb*, 13 So. 3d 92, 94 n.2 (Fla. 3d DCA

---

[1] The statutory rate of interest on judgments established on July 1, 2014 and October 1, 2014 was 4.75% per annum.

2009) ("The mortgage is merged into the judgment, is thereby extinguished, and 'loses its identity.'").

23. On September 22, 2014, the Final Judgment was recorded in the public records of Brevard County, Florida in OR Book 7212, Pages 1819 - 1823.

24. On September 26, 2014, counsel for US Bank filed its Notice of Conciliation Conference in the foreclosure case, serving same on counsel for Ms. Mackiewicz.  (Composite Exhibit A, pages 42 - 43)

25. On October 17, 2014, Defendant Nationstar sent 3 separate letters directly to Plaintiff. (Composite Exhibit A, pages 47 - 53)  These letters informed Plaintiff, among other things, of an offer to participate in a forbearance plan to avoid the judicial sale of Plaintiff's property, directed Plaintiff to make monthly payments and send financial documentation to Defendant (Composite Exhibit A, page 47, paragraphs 3 - 4), stated no fees would be charged (Composite Exhibit A, page 48, paragraph 1), and stated acceleration and foreclosure actions were not waived under the plan (Composite Exhibit A, page 51, paragraph 5) (hereinafter "Forbearance Plan").  The letter(s) misstated that the promissory note and mortgage remained in full force and effect when, in fact, they had merged into the Final Judgment.  (Composite Exhibit A, page 51, paragraph 9).  The letters stated they were from a debt collector attempting to collect a debt.

26. On November 25, 2014, Defendant Nationstar sent a mortgage statement directly to Plaintiff.  This mortgage statement stated it was an attempt to collect a debt.  The mortgage statement misstated the amounts owed under either the Final Judgment and/or the

Forbearance Plan. Specifically, the statement represented Plaintiff must pay, by December 24, 2014, (a) a monthly installment payment of $1,911.70, which was $1,038.37 greater than the established Forbearance Plan payment of $873.33; (b) interest at the rate of 6.150%, which was 1.4% greater than allowed by the Final Judgment; (c) post-Final Judgment costs for legal, maintenance, property inspection and escrow fees, which were not chargeable to Ms. Mackiewicz under the Final Judgment; and (d) an unexplained "overdue payment". (Composite Exhibit A, page 44)

27. On December 8, 2014, counsel for US Bank filed its motion to cancel and reschedule the December 11, 2014 foreclosure sale of the subject property, and served same on counsel for Ms. Mackiewicz. (Composite Exhibit A, pages 45 - 54)

28. On December 8, 2014, Defendant Nationstar sent a letter directly to Plaintiff. The purpose of the letter was to induce Plaintiff to contact Defendant, to obtain Plaintiff's financial information and to obtain settlement of the debt. The letter stated it was from a debt collector attempting to collect a debt and any information obtained would be used for that purpose. (Composite Exhibit A, page 55)

29. On December 9, 2014, the court in the foreclosure action cancelled the December 11, 2014 sale of Plaintiff's home and rescheduled the sale for April 15, 2015. (Composite Exhibit A, page 56)

30. On December 26, 2014, Defendant Nationstar sent a mortgage statement directly to Plaintiff. This mortgage statement stated it was an attempt to collect a debt. The mortgage statement misstated the amounts owed under either the Final Judgment and/or the

Forbearance Plan. Specifically, the statement represented Plaintiff must pay, by January 24,

2015, (a) a monthly installment payment of $1,911.70, which was $1,038.37 greater than

the established Forbearance Plan payment of $873.33; (b) interest at the rate of 6.150%,

which was 1.4% greater than allowed by the Final Judgment; (c) post-Final Judgment costs

for legal, maintenance, property inspection and escrow fees, which were not chargeable to

Ms. Mackiewicz under the Final Judgment; and (d) an unexplained "overdue payment".

(Composite Exhibit A, page 57)

31. On December 29, 2014, Defendant Nationstar sent a letter directly to Plaintiff. This letter

misstated Plaintiff was 523 days past due on payments on the (merged) mortgage, that a

Forbearance Plan payment was due February 1, 2015, that fees could be incurred,

foreclosure had been started and Plaintiff must pay the unexplained amount of $34,785.79

by an unspecified date. (Composite Exhibit A, page 58)

32. On January 2, 2015, Defendant Nationstar sent a letter directly to Plaintiff misstating

Plaintiff's failure to maintain insurance is a breach of the terms of the (merged) mortgage

and demanding she purchase insurance. (Composite Exhibit A, page 59 - 60)

33. On January 27, 2015, Defendant Nationstar sent a mortgage statement directly to Plaintiff.

This mortgage statement stated it was an attempt to collect a debt. The mortgage statement

misstated the amounts owed under either the Final Judgment and/or the Forbearance Plan.

Specifically, the statement represented Plaintiff must pay, by February 24, 2015, (a) a

monthly installment payment of $1,911.70, which was $1,038.37 greater than the

established Forbearance Plan payment of $873.33; (b) interest at the rate of 6.150%, which

was 1.4% greater than allowed by the Final Judgment; (c) post-Final Judgment costs for legal, maintenance, property inspection, escrow and other unexplained fees, which were not chargeable to Ms. Mackiewicz under the Final Judgment; and (d) an unexplained "overdue payment". (Composite Exhibit A, page 61)

34. On January 28, 2015, Defendant Nationstar sent a letter directly to Plaintiff. This letter misstated Plaintiff was 553 days past due on payments on the (merged) mortgage, that foreclosure had been started and Plaintiff must pay the unexplained amount of $35,824.16 by an unspecified date. The letter made no reference to the Forbearance Plan. (Composite Exhibit A, page 62)

V
ALLEGATIONS COMMON TO FDCPA COUNTS

35. Plaintiff has been "the object of collection activity arising from consumer debt".

36. Plaintiff is a "Consumer" pursuant to the FDCPA in that she is a natural person and was allegedly obligated to pay an debt arising out of a transaction where the money or services, which are the subject of the transaction, were primarily for a personal purposes, to wit: a mortgage loan on a personal residence which merged into a final judgment of foreclosure.

37. The debt at issue under the FDCPA was primarily for personal, family, or household purposes. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

38.   The Defendant has engaged in an act or omission prohibited by the or FDCPA.

39.   The Defendant is a "debt collector" within the definition established by the FDCPA, 15 U.S.C. § 1692a(6), in that they use the U.S. Mails in a business, the principal purpose of which is to regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Nationstar advertises on is website at http://www.nationstarholdings.com that it is one of the largest and fastest growing mortgage servicers with a servicing portfolio in excess of $375 billion and over 2 million customers.

40.   While the term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, the term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.  15 U.S.C. § 1692a(4).   The Defendant received the defaulted debt for collection on behalf of US Bank.

VI
ALLEGATIONS COMMON TO FCCPA COUNTS

41.   Plaintiff has been "the object of collection activity arising from consumer debt".

42.   Plaintiff is a "Consumer" pursuant to the FCCPA in that she is a natural person and was allegedly obligated to pay a debt arising out of a transaction where the money or services which were the subject of the transaction were primarily for personal purposes, to wit: a mortgage loan on a personal residence which merged into a final judgment of foreclosure.

43.   The debt at issue under the FCCPA was primarily for personal, family, or household purposes.  The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to

pay money arising out of a transaction in which the money, property, insurance, or services

which are the subject of the transaction are primarily for personal, family, or household

purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. §

559.55(1).

44.   The Defendants have engaged in an act or omission prohibited by the or FCCPA.

45.   The Defendant is a "debt collector" within the definition established by the FCCPA, Fla.

Stat. § 559.55(6), in that it uses the U.S. Mails within this state in a business, the principal

purpose of which is to to regularly collect or attempt to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another.

46.   The Defendant is a "consumer collection agency" within the definition established by the

FCCPA, Fla. Stat. § 559.55(7) in that it is a business entity engaged in the business of

soliciting consumer debts for collection or of collecting consumer debts.

47.   The Defendant regularly engages in the collection of consumer debts.

48.   The Defendant is a "person" within the meaning of the FCCPA, and in particular as it is

used in Fla. Stat. § 559.72.

## VII
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of the TCPA - 47 USC § 227, *et. seq.*

49.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 34, above, as if fully

set forth herein.

50. The Defendant knew that Plaintiff was represented by counsel in the foreclosure action, knew Plaintiff's counsel had issued a Cease Contact Demand and that these actions caused all consent to contact her to be revoked.

51. The Defendant failed to honor the Plaintiff's Cease Contact Demand and made hundreds of automated telephone calls to the Defendant within a 12 month period.

52. The Defendant used an artificial or prerecorded voice in the beginning of each call. When the Plaintiff answered the Defendant's telephone calls, an artificial or prerecorded voice was initially heard, in violation of 47 U.S.C. § 227(b)(1).

53. The Defendant willfully or knowingly violated the automated-call requirements of 47 U.S.C. § 227(b)(1) and 47 C.F.R. § 64.1200(a)(1) by making calls to the Plaintiff's cellular telephone or by authorizing an agent to do so:
   a. through the use of an automatic telephone dialing system.
   b. by using an artificial or prerecorded voice in the beginning of each call.

54. "The term "automatic telephone dialing system" means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)  On information and belief, Defendant, or Defendant's authorized agent, used a predictive dialer to place the calls to Plaintiff's cellular telephone. A a predictive dialer is:

   Equipment that dials numbers and, when certain computer software is attached, also assisted telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order ... [i]n most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at rate to ensure that when a consumer answers the phone, a sales person is

available to take the call.

(See Conglio v. Bank of America, 8:14-cv-01628; 2014 WL 6882294 (M.D.Fla., 12/4/2014), *also see*, 2008 TCPA Order 23 FCC Rcd. at 566, para. 12, *and see* 2003 TCPA Order, 18 FCC RCD. AT 14091, PARA. 131).

55.   Defendant called Plaintiff's cellular telephone hundreds of times without consent.

   **WHEREFORE**, Plaintiff prays for judgment against the Defendant as follows:

   a.   Enjoining the violation pursuant to 47 USC §227(b)(3)(A).
   b.   $500 in statutory damages for each call pursuant to 47 USC §227(b)(3)(B).
   c.   Treble statutory damages for each call for Defendant's willful or knowing violation of 47 USC §227(b)(3).

SECOND CAUSE OF ACTION
Violations of the FDCPA
(Violation of 15 U.S.C. § 1692e)

56.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 40 above as if fully set forth herein.

57.   15 U.S.C. § 1692e states in relevant part:

   A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
   [...]
   (2) The false representation of—
         (A) the character, amount, or legal status of any debt; or
   [...]
   (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
   [...]
   (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

[...]

58. Plaintiff did not give the Defendant consent to contact her and any prior consent was revoked when her foreclosure counsel filed his motion to dismiss in the foreclosure case. Consent was also revoked when Plaintiff's foreclosure counsel delivered the Cease Contact Demand to Defendant.

59. Defendant made hundreds of telephone calls to Plaintiff in the past 12 months. Of those calls, all were post-acceleration and post-filing for foreclosure of the Subject Debt and many were post-Final Judgment of foreclosure. Each telephone call in the past 12 months was a false, deceptive, or misleading attempt to collect a debt by falsely representing less than the accelerated amount and/or Final Judgment amount was due, in violation of 15 U.S.C. § 1692e.

60. Defendant's letter of October 17, 2014 sent to Plaintiff representing the promissory note and mortgage relating to the Subject Debt were in full force and effect, knowing they were merged into the Final Judgment, was a false representation of the character, amount or legal status of the debt, and a false representation or deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692e.

61. Defendant's mortgage statements of November 25, 2014, December 26, 2014, and January 27, 2015 sent to Plaintiff representing an unauthorized interest rate was effective and representing unauthorized post-Final Judgment expenses were due, were false representations of the character, amount or legal status of the debt, and a false

representation or deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692e.

62. Defendant's communications of November 25, 2014, December 26, 2014, December 29, 2014, January 27, 2015 and January 28, 2015 representing pre-Final Judgment monthly installments payments were due under the (merged) mortgage, were false representations of the character, amount or legal status of the debt, and a false representation or deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692e.

63. Defendant's letters of December 29, 2014 and January 28, 2015 representing foreclosure proceedings had been started, knowing of the Final Judgment, were threats to take action that could not be legally be taken or that was not intended to be taken, in violation of 15 U.S.C. § 1692e.

64. Plaintiff seeks actual damages, statutory damages, declaratory relief, equitable relief, attorneys' fees and costs from the Defendant.

THIRD CAUSE OF ACTION
Violations of the FDCPA
[Violation of 15 U.S.C. § 1692f]

65. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 40 above as if fully set forth herein.

66. 15 U.S.C. § 1692f states in part:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

67. Each telephone call was an unfair or unconscionable attempt to collect a debt that that was not permitted by law in violation of 15 U.S.C. § 1692f because Plaintiff did not give the Defendant consent to contact her and any prior consent was revoked when her foreclosure counsel filed her motion to dismiss the foreclosure. Consent was also revoked when Plaintiff's counsel delivered his Cease Contact Demand to Defendant.

68. Defendant's communications of November 25, 2014, December 26, 2014 and January 27, 2015 collecting amounts not authorized by the Final Judgment were unfair or unconscionable attempts to collect a debt in violation of 15 U.S.C. § 1692f.

69. Plaintiff seeks actual damages, statutory damages, declaratory relief, equitable relief, attorneys' fees and costs from the Defendant.

FOURTH CAUSE OF ACTION
Violations of the FDCPA
[15 U.S.C. 1692c(a)(2)]

70. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 40 above as if fully set forth herein.

71. 15 U.S.C. § 1692c(a) states:

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer;

72. Each telephone call was without the prior consent of the Plaintiff. Plaintiff did not give the Defendant consent to contact her and any prior consent was revoked when her foreclosure counsel filed her notice of appearance in the foreclosure case. Consent was also revoked when Plaintiff's counsel delivered his Cease Contact Demand to Defendant.

73. Each of the 13 letters and mortgage statements sent directly to Plaintiff was without the prior consent of the Plaintiff and with knowledge that she was represented by counsel in the foreclosure action and in the post-Final Judgment Forbearance Plan activities.

74. The Defendant knew or could readily ascertain the Plaintiff's counsel's names and addresses.

75. Each of the hundreds of calls in the past year were a violation of 15 U.S.C. § 1692c(a).

76. Each of the written communications sent directly to Plaintiff were a violation of 15 U.S.C. § 1692c(a).

77. Plaintiff seeks actual damages, statutory damages, declaratory relief, equitable relief, attorneys' fees and costs from the Defendant.

### FIFTH CAUSE OF ACTION
### Violations of the FCCPA
### [Violation of § 559.72(9)]

78. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 34 and 41 - 48 above as if fully set forth herein.

79. Florida Statutes § 559.72(9) provides:

> In collecting consumer debts, no person shall:
> Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

80. Each of Defendant's communications of November 25, 2014, December 26, 2014 and January 27, 2015 claiming to be entitled to post-Final Judgment expenses not authorized by the Final Judgment, were made by Defendant when Defendant knew such amounts were not legitimate, violating Florida Statutes section 559.72(9).

81. Each of Defendant's mortgage statements of November 25, 2014, December 26, 2014, and January 27, 2015 sent to Plaintiff claiming to be entitled to an interest rate in excess of that allowed in the Final Judgment, were made by Defendant when Defendant knew such amounts were not legitimate and that legal right did not exist, was a violation of Florida Statutes section 559.72(9).

82. Each of Defendant's letters of December 29, 2014 and January 28, 2015 asserting foreclosure proceedings had been started, were made by Defendant when Defendant knew of the existence of the Final Judgment and knowing that right did not exist, was a violation of Florida Statutes section 559.72(9).

83. Plaintiff seeks actual damages, statutory damages, declaratory relief, equitable relief, attorneys' fees and costs from the Defendant.

## SIXTH CAUSE OF ACTION
### Violations of the FCCPA
### [Violation of § 559.72(18)]

84. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 34 and 41 - 48 above as if fully set forth herein.

85. Florida Statutes § 559.72(18) provides:

> In collecting consumer debts, no person shall:
> (18)   Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

86. Each of the hundreds of telephone calls from the Defendant to the Plaintiff were placed when the Defendant knew that the Plaintiff had counsel, knew of the Cease Contact Demand and when the Defendant knew, or could readily ascertain such counsels name and address.

87. Each of the 13 written communications from the Defendant to the Plaintiff were sent when the Defendant knew that the Plaintiff had counsel, knew of the Cease Contact Demand and when the Defendant knew, or could readily ascertain such counsels name and address.

88. Defendant's persistent, illegal debt collection constituted malicious acts of bad faith and were willful violations of the law because its telephone calls and written communications

occurred after the Plaintiff's counsel delivered its Cease Contact Demand to the Defendant.

Florida Statutes § 559.77(2) provides in part:

> the court shall consider the nature of the defendant's noncompliance with s. 559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional...The court may award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part.

89. Plaintiff did not give the Defendant consent to contact her and any prior consent was revoked when her foreclosure counsel filed her motion to dismiss in the foreclosure case. Consent was also revoked when Plaintiff's counsel delivered the Cease Contact Demand to Defendant.

90. The Defendant's persistent, illegal debt collection constituted malicious acts of bad faith and were willful violations of the law.

91. Plaintiff seeks general damages, special damages, statutory damages, punitive damages, court filing costs and service of process costs, reasonable attorney's fees, declaratory relief and equitable relief to enjoin Defendant to cease contact with her.


## VIII
## DEMAND FOR TRIAL BY JURY

92. Plaintiff demands a trial by jury for the violations of the TCPA, FDCPA and FCCPA.


/s/ James E. Orth, Jr.
James E. Orth, Jr. FBN 75941

/s/ George M. Gingo


Page 20 of 21

George M. Gingo, 0879533

Gingo & Orth, P.A.
400 Orange Street
Titusville, FL 32796
321-264-9624 Office
866-311-9573 Fax
jamesorthlaw@gmail.com
gingo.george@gmail.com