# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ALETHA K. MACKIEWICZ,

     **Plaintiff,**

v.                                                    Case No:   6:15-cv-465-Orl-18GJK

NATIONSTAR MORTGAGE, LLC,

     **Defendant.**

---

# ORDER

THIS CAUSE comes for consideration on Defendant Nationstar Mortgage, LLC's ("Nationstar") Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") (Doc. 16), to which Plaintiff Aletha K. Mackiewicz responded in opposition (Doc. 19).   For the reasons that follow, Nationstar's motion will be granted in part and denied in part.

## I. BACKGROUND[1]

Mackiewicz brings her complaint against Nationstar for Nationstar's purported violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227, *et seq.* and its implementing regulations at 47 C.F.R. § 64.1200, *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), section 559.55, Florida Statutes.

---

[1] In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true the factual allegations in the complaint and draw all inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (citing *Fortner v. Thomas*, 983 F.2d 1024, 1027 (11th Cir. 1993)).   Accordingly, the Court will accept the factual allegations in Mackiewicz's Complaint as true and utilize same for purposes of establishing the background of this case.

On September 4, 2002, Mackiewicz obtained a mortgage loan (the "Subject Debt") from Bank of America, N.A. ("BOA") that was secured by her homestead residence (the "Subject Property"). (Doc. 1 ¶ 10.) On August 2, 2013, after Mackiewicz defaulted on the Subject Debt, said debt was assigned for collection from BOA to Nationstar. (*Id.* ¶¶ 11-12.) Subsequently, "[o]n December 26, 2013, the defaulted debt was assigned for collection from [Nationstar] to U.S. Bank, as Trustee for the Holders of the Banc of America Funding Corporation, 2008-FT1 Trust, Mortgage Pass-Through Certificates, Series 2008-FT1 []." (*Id.* ¶ 13.)

On January 15, 2014, U.S. Bank filed a foreclosure suit (the "Foreclosure Action") against Mackiewicz, which Mackiewicz's attorney sought to dismiss via a motion to dismiss filed on February 14, 2014. (*Id.* ¶¶ 14, 15.) Counsel for Mackiewicz served said motion to dismiss on counsel for U.S. Bank. (*Id.* ¶ 15.) On March 5, 2014, counsel for Mackiewicz also "sent, and [Nationstar] received, a facsimile letter marked URGENT demanding Nationstar cease all attempts to communicate directly with [] Mackiewicz regarding the Subject Debt (hereinafter the ['] Cease Contact Demand['])." (*Id.* ¶ 17.) Subsequently, "[b]etween March 6, 2014 and March 5, 2015, Nationstar, without consent and in defiance of the Cease Contact Demand, caused [Mackiewicz's] cellular telephone to be called hundreds of times." (*Id.* ¶ 18.) Nationstar also sent electronic mail directly to Mackiewicz on March 28, 2014 and July 29, 2014 (collectively, the "Mortgage Link E-mails") that included a link for viewing Nationstar's electronic mortgage statement. (*Id.* ¶¶ 19, 21.) Also, on May 21, 2014, Nationstar sent a letter (the "Insurance Letter") directly to Mackiewicz that included the statement that "$2,973.86 would be added to the Subject Debt, in the future, for post-acceleration, forced place insurance expenses." (*Id.* ¶ 20.)

On September 11, 2014, U.S. Bank was granted a final judgment (the "Foreclosure Final Judgment") in its favor in the Foreclosure Action. (*Id.* ¶ 22.) The Foreclosure Final Judgment,

"awarded [U.S. Bank] the sum of $79,483.92 plus interest[,] . . . ordered [U.S. Bank] to advance all post-[Foreclosure] Final Judgment costs with reimbursement for same[,] . . . ordered [the Subject Property] be sold on December 11, 2014 to pay the [Foreclosure] Final Judgment[,] and reserved jurisdiction to enter a deficiency judgment. (*Id.*) The Foreclosure Final Judgment was recorded in the public records of Brevard County, Florida on September 22, 2014. (*Id.* ¶ 23.) On December 9, 2014, the sale of the Subject Property was rescheduled for April 15, 2015. (*Id.* ¶ 29.)

On September 26, 2014, after recordation of the Foreclosure Final Judgment, counsel for U.S. Bank filed a notice of conciliation conference in the State Foreclosure Action and served same on counsel for Mackiewicz. (*Id.* ¶ 24.) Subsequently, on October 17, 2014, Nationstar sent three (3) letters (collectively, the "Loan Workout Letters") directly to Mackiewicz that, according to Mackiewicz, "misstated that the promissory note and mortgage remained in full force and effect . . . [and] stated [that] they were from a debt collector attempting to collect a debt." (*Id.* ¶ 25.) Allegedly, the Loan Workout Letters also "informed [Mackiewicz], among other things, of an offer to participate in a forbearance plan to avoid the judicial sale of [the Subject Property], directed [Mackiewicz] to make monthly payments and send financial documentation to [Nationstar] [], stated no fees would be charged [], and stated acceleration and foreclosure actions were not waived under the plan []." (*Id.*) On three (3) separate occasions, November 25, 2014, December 26, 2014, and January 27, 2015, Nationstar also sent mortgage statements (collectively, the "Mortgage Statements") directly to Mackiewicz. (*Id.* ¶¶ 26, 30, 33.) Purportedly, each Mortgage Statement "stated it was an attempt to collect a debt . . . [and] misstated the amounts owed under either the [Foreclosure] Final Judgment and/or the [f]orbearance [p]lan." (*Id.*) Nationstar also sent a letter directly to Mackiewicz on December 8, 2014 (the "Loan Specialist Letter") that stated it was from

a debt collector attempting to collect a debt in an alleged effort "to induce [Mackiewicz] to contact [Nationstar], to obtain [Mackiewicz's] financial information[,] and to obtain settlement of the [Subject Debt]." (*Id.* ¶ 28.)   Nationstar sent additional letters directly to Mackiewicz on December 29, 2014 and January 28, 2015 (the "Past Due Letters") that, allegedly, included numerous misstatements regarding the amount of days Mackiewicz was past due in making payments on the mortgage, fees that Mackiewicz could potentially incur, the commencement of foreclosure, and unexplained amounts that Mackiewicz was obligated to pay by an unspecified date.[2]   (*Id.* ¶¶ 31, 34.)   Mackiewicz also avers that Nationstar sent a letter directly to her on January 2, 2015 (the "Insurance Proof Letter"), "misstating [that] [Mackiewicz's] failure to maintain insurance is a breach of the terms of the (merged) mortgage and demanding she purchase insurance." (*Id.* ¶ 32.)

On March 20, 2015, Mackiewicz filed her six-count complaint (the "Complaint") against Nationstar. (*Id.* at 1).   In Count One, Mackiewicz alleges that Nationstar violated the TCPA.   In Counts II, III, and IV, respectively, Mackiewicz avers that Nationstar violated sections 1692e, 1692f, and 1692c(a)(2) of the FDCPA.   In Counts V and VI, Mackiewicz attempts to bring claims against Nationstar for violations of the FCCPA, specifically section 559.72(9) and section 559.72(18), respectively.   Nationstar now moves to dismiss Counts II through VI of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

A properly plead complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[2] The letter dated December 29, 2014 includes the statement that "a [f]orebearance [p]lan payment was due February 1, 2015 . . . ." (*Id.* ¶ 31.)

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This plausibility standard requires a two-step inquiry: "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 678-79. Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Although the pleading standard set forth in Rule 8 does not require in depth factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 570).  Dismissal of an action is appropriate "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

Additionally, evaluation of a motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is typically limited to the "face of the complaint and the attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997).  However, a court may consider extraneous materials without converting a motion to dismiss into a motion for summary judgment if the material is "(1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").  "In this context, 'undisputed' means that the authenticity of the document is not challenged." *Id.* (citing *Horsley*, 304 F.3d at 1134).  Additionally, a court may

take judicial notice of certain facts not contained in the pleadings without converting a motion to dismiss into a motion for summary judgment. *See Universal Express, Inc. v. United States SEC*, 177 F. App'x 52, 53 (11th Cir. 2006). At the motion to dismiss stage, a court may take judicial notice of public records that are "not subject to reasonable dispute" and may be readily determined to be accurate. *Horne v. Potter*, 392 Fed. App'x 800, 802 (11th Cir. 2010) (citing Fed. R. Evid. 201(b)). Public records are among the permissible facts that a district court may consider. *Id.*

Mackiewicz attached numerous documents as exhibits to the Complaint and referenced portions of these items throughout the Complaint. For purposes of evaluating Nationstar's Motion to Dismiss, the Court will consider the following documents: the Verified Complaint to Foreclosure Mortgage filed in the Foreclosure Action (Doc. 1-1 at 2-5), the Certification as to Original Promissory Note dated December 6, 2013 (*Id.* at 6), the Promissory Note (*Id.* at 7-9), the Assignment of Mortgage (*Id.* at 10), the Mortgage (*Id.* at 11-21), the Motion to Dismiss filed in the Foreclosure Action (*Id.* at 29-30), the Cease Contact Demand (*Id.* at 30-33), the Insurance Letter (*Id.* at 34-35), the Mortgage Link E-mails (*Id.* at 33, 36), the Foreclosure Final Judgment (*Id.* at 38-42), the Notice of Conciliation Conference filed in the Foreclosure Action (*Id.* at 43-44), the Mortgage Statements (*Id.* at 45, 58, 62), the Motion to Cancel and Reschedule Foreclosure Sale filed in the Foreclosure Action (*Id.* at 46), the Loan Workout Letters (*Id.* at 48-55), the Loan Specialist Letter (*Id.* at 56), the Order Cancelling Sale in the State Foreclosure Action (*Id.* at 57), the Past Due Letters (*Id.* at 59, 63), and the Insurance Proof Letter (*Id.* at 60). The Court is persuaded that the aforementioned written communications from Nationstar to Mackiewicz that are attached to the Complaint and listed *supra* are central, undisputed, and otherwise appropriate to consider for purposes of determining whether the Complaint should be dismissed. Further, the documents filed in the Foreclosure Action pertaining to the Subject Property and listed *supra*

qualify as public records that are central to the claims Mackiewicz asserts in this case, and neither party disputes the authenticity of these documents. Accordingly, the Court will consider these documents in its evaluation of Nationstar's motion.

## III. ANALYSIS

### A. CFPB Regulations and Nationstar's Liability under the FDCPA

Nationstar argues that Mackiewicz's FDCPA claims are due to be dismissed because Nationstar's "complained of acts are expressly authorized by the [Consumer Financial Protection Bureau]." (Doc. 16 at 7.) Mackiewicz agrees with Nationstar that the Consumer Financial Protection Bureau ("CFPB") enacted servicing rules that require a loan servicer to provide borrowers with disclosures regarding force-placed insurance, written notice of any evaluations of loss mitigation options, and periodic statements for each billing cycle. (*Id.* at 5; Doc. 19 at 9.) Further, the parties agree that said regulations are located at 12 C.F.R. § 1024.37, 12 C.F.R. § 1024.41, and 12 C.F.R. § 1026.41, respectively. (*Id.*) It is also undisputed that the CFPB issued a ruling (the "CFPB Ruling") on October 15, 2013, wherein the CFPB advised that "these disclosures are specifically mandated by the Dodd-Frank Wall Street Reform and Consumer Protection Act, which makes no mention of their potential cessation under the FDCPA and presents a more recent and specific statement of legislative intent regarding these disclosures than does the FDCPA." CFPB Bulletin, 2013-12, available at http://files.consumerfinance.gov/f/201310_cfpb_mortgage-servicing_bulletin.pdf; *see* Doc. 16-1. As set forth in the CFPB Ruling:

> The CFPB concludes that the FDCPA "cease communication" option does not generally make servicers that are debt collectors liable under the FDCPA if they comply with certain provisions of Regulation X (12 CFR 1024.35 (error resolution), 1024.36 (requests for information), 1024.37 (force-placed insurance), and 1024.41 (loss mitigation)) and Regulation Z (12 CFR 1026.20(d) (adjustable-rate mortgage (ARM) initial interest rate adjustment) and 1026.41 (periodic

statement) . . . . [T]he CFPB concludes that a servicer that is considered a debt collector under the FDCPA with respect to a borrower that provides disclosures to and communicates with the borrower pursuant to the provisions listed above, notwithstanding a "cease communication" instruction sent by the borrower, is not liable under the FDCPA.

(Doc. 16-1 at 7.) The CFPB Ruling further provides that required disclosures "provide useful information to consumers regardless of their collections status" and a servicer that provides such disclosures to and communicates with a borrower, notwithstanding the receipt of a "cease communication" instruction from a borrower, is not liable under the FDCPA. (*Id.* at 8.) Moreover, it is undisputed that § 1692k(e) of the FDCPA explicitly provides that liability shall not arise under the FDCPA for "any act done or omitted in good faith in conformity with an advisory opinion of the [CFPB], notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason." 15 U.S.C. § 1692k(e).

In 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), Pub. L. No. 111-203, 124 Stat. 1376, which created the CFPB and tasked the CFPB with "regulat[ing] the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a). The Dodd-Frank Act largely transferred the rulemaking authority for federal consumer financial laws such as the Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA") to the CFPB. *See* 12 U.S.C. §§ 5491, 5511. In January 2013, the CFPB also issued several final rules to implement amended statutory requirements governing mortgages, including the 2013 TILA Servicing Final Rule and the 2013 RESPA Servicing Final Rule (collectively referred to as the "Mortgage Servicing Final Rules"). The Mortgage Servicing Final Rules, which became effective on January 10, 2014, require loan servicers to provide borrowers with certain disclosures

regarding forced place hazard insurance, periodic statements for each billing cycle, and information regarding loss mitigation options. *See* 12 C.F.R. §§ 1024.37, 1026.41, 1024.41.

The regulations set forth in 12 C.F.R. § 1024.37 pertaining to a loan servicer's obligation to disclose information regarding force placed insurance to the borrower provides that a servicer must provide written notice containing certain delineated information to the borrower prior to assessing "any premium charge or fee related to force-placed insurance." 12 C.F.R. § 1024.37(c). In this case, it was reasonable for Nationstar to conclude that, in good faith conformity with § 1024.37, Nationstar was obligated to send the Insurance Letter and Insurance Proof Letter directly to Mackiewicz, both of which pertained to force-placed hazard insurance. Accordingly, and in adherence to §1692k(e) of the FDCPA, Mackiewicz fails to state a plausible claim against Nationstar based on Nationstar's communications regarding force placed hazard insurance, specifically Nationstar's sending of the Insurance Letter and the Insurance Proof Letter to Mackiewicz.

Pursuant to 12 C.F.R. § 1024.41, a loan servicer is required to provide a borrower with written notice of the borrower's loss mitigation options within a certain time period after receipt of a loss mitigation application from the borrower. 12 C.F.R. § 1024.41(c). In this case, although Nationstar filed a Notice of Conciliation Conference in the Foreclosure Action, Mackiewicz does not allege that she directly contacted Nationstar to inquire about loss mitigation options, made a loss mitigation application to Nationstar, or otherwise revoked the Cease Contact Demand as it relates to her evaluation for loss mitigation options. As such, § 1024.41 and the CFPB's interpretation of same does not serve to immunize Nationstar from FDCPA liability for Nationstar's communications regarding loss mitigation options.

As set forth in 12 C.F.R. § 1026.41, "[a] servicer of a transaction subject to this section

shall provide the consumer, for each billing cycle, a periodic statement . . . ."  12 C.F.R. § 1026.41(a)(2).  The Court is not persuaded that 12 C.F.R. § 1026.41 obligates a loan servicer to send periodic billing statements to the borrower after acceleration of the loan at issue and entry of a foreclosure judgment.  As such, 12 C.F.R. § 1026.41 and the CFPB's interpretation of same does not shield Nationstar from FDCPA liability for sending periodic billing statements, including the Mortgage Link E-mails and Mortgage Statements, to Mackiewicz.

*B. FDCPA: Counts II, III, and IV*

Nationstar argues that Mackiewicz's FDCPA claims fail because "a letter from a mortgage servicer regarding loan workout options (like many of the letters here) is not an attempt to collect a debt and does not constitute a communication under the FDCPA."  (Doc. 16 at 7) (citing *Santoro v. CTC Foreclosure Serv. Corp.*, 12 Fed. App'x 476, 480 (9th Cir. 2001) ("A letter suggesting loan workout options is not seeking to collect the debt.") (citation omitted).  However, "the FDCPA does not explain what is meant by 'in connection with the collection of any debt,' and the Eleventh Circuit has not established a bright-line rule for determining whether a communication from a debt collector is made 'in connection with the collection of any debt.'"  *Dyer v. Select Portfolio Servicing, Inc.*, No. 5:15-cv-121-Oc-30PRL, 2015 WL 3510283, at *2 (M.D. Fla. June 4, 2015).  In determining whether a loan servicer sending a letter addressing loan workout options to a borrower qualifies as debt-collection activity under the FDCPA, a court should consider the letter from the perspective of the least sophisticated consumer and consider whether the intent behind the letters is to collect debt, induce settlement of debt, or simply provide information to the borrower.  *See* Dyer, 2015 WL 3510283, at *4 (dismissing FDCPA claims after finding that sending letters that did not demand payment from the borrower or reference specifics about the subject debt at issue and explicitly stated that they were for informational purposes only was not

an effort to collect a debt). In the instant case, the Loan Workout Letters and the Loan Specialist Letter reference the possibility of a loan workout option regarding the Subject Debt in some capacity. (*See* Doc. 1-1 at 48-56.) Said communications explicitly state that "Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." (*Id.* at 53, 56.) Additionally, the Loan Workout Letters reference specific debt Mackiewicz owes, request additional information, direct monthly payments, and offer loan resolution options. (*See id.* at 48-55.) After consideration of the content of all of the written communications that Nationstar sent Mackiewicz, including the Loan Workout Letters and the Loan Specialist Letter, the Court is not persuaded that Nationstar's communications referencing loan workout options fail to qualify as debt-collection activity that plausibly falls under the ambit of the FDCPA. Accordingly, Mackiewicz's claims will not be dismissed based on an argument that Nationstar's communications concerned loan workout options.

Additionally, Nationstar avers that Mackiewicz's FDCPA claims fail because "the Merger Doctrine had no effect on Nationstar's right to collect post-judgment advances since those advances were permitted by the Foreclosure Judgment and Florida law as no sale has taken place and the judgment has not been satisfied." (Doc. 16 at 8) (citations omitted). Regarding the interplay between the Merger Doctrine and payments Nationstar requested from Mackiewicz after entry of the Foreclosure Final Judgment, Nationstar does not automatically violate the FDCPA by requesting such payments. Under Florida law, "the doctrine of merger [(the "Merger Doctrine")] operates to extinguish a cause of action on which a judgment is based and bars a subsequent action for the same cause." *Sunshine Utils. Equip., Inc. v. Treasure Coast Utils, Inc.,* 421 So. 2d 1096, 1097 (Fla. 4th DCA 1982) However, such a merger does not serve to extinguish a mortgagee's lien rights, as Florida law provides that a lien merges into a foreclosure judgment after issuance of

the certificate of title on the subject property or satisfaction of the judgment. *See Holliston v. Florida Default Law Group, P.L.*, No. 8:07-cv-336-T-26EAJ, 2008 WL 894606, at *8 (M.D. Fla. Mar. 13, 2008). Thus, the doctrine of merger "does not operate to extinguish a mortgage when the judgment is not satisfied." *Tamblyn v. Riverbent Marine, Inc.*, 837 F.2d 447, 448 (11th Cir. 1988). In this case, Mackiewicz received the communications at issue from Nationstar after entry of the Foreclosure Final Judgment but prior to issuance of a certificate of title on the Subject Property or satisfaction of judgment. As such, Mackiewicz fails to state an FDCPA claim against Nationstar based on Nationstar sending communications representing that the Promissory Note and Mortgage were in full force and effect after entry of the Foreclosure Final Judgment. Further, Mackiewicz fails to state an FDCPA claim against Mackiewicz based on Nationstar sending the Mortgage Statements and Past Due Letters that allegedly asked for pre-Foreclosure Final Judgment installment payments and include a 6.15% interest rate. Additionally, Nationstar did not violate the FDCPA by allegedly including in the Mortgage Statements "post-Final Judgment costs for legal, maintenance, property inspection, and escrow fees, which were not chargeable to [] Mackiewicz under the Final Judgment . . . ." (*See* Doc. 1 ¶¶ 26, 30, 33); (*see also* Doc. 1-1 at 11-19).

In Count II, Mackiewicz alleges that Nationstar violated § 1692e of the FDCPA, which states, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> [...]
> (2) The false representation of –
> A. The character, amount or legal status of any debt; or
> [...]
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> [...]

-12-

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
[...]

15 U.S.C. § 1692e.  As grounds therefore, Mackiewicz alleges that "[e]ach telephone call in the past 12 months was a false, deceptive, or misleading attempt to collect a debt by falsely representing less than the accelerated amount and/or Final Judgment amount was due, in violation of 15 U.S.C. § 1692e." (Doc. 1 ¶ 59.)  Next, Mackiewicz avers that Nationstar violated § 1692e by sending a letter dated October 17, 2014 to Mackiewicz "representing the promissory note and mortgage relating to the Subject Debt were in full force and effect, knowing they were merged into the Final Judgment . . . ." (*Id.* ¶ 60.)  Further, Mackiewicz avers that Nationstar violated § 1692e by sending the Mortgage Statements and Past Due Letters that allegedly "represent[ed] pre-[Foreclosure] Final Judgment monthly installments were due under the (merged) mortgage . . . ." (*Id.* ¶ 62.)  Mackiewicz also avers that the Mortgage Statements represented that an unauthorized interest rate was effective and that unauthorized post-Foreclosure Final Judgment monthly installment payments were due and that the Past Due Letters indicated that "foreclosure proceedings had been started, knowing of the [Foreclosure] Final Judgment . . . ." (*Id.* ¶ 63.)

As expounded upon earlier in the Court's discussion of communications regarding loan workout options and the Merger Doctrine, Mackiewicz fails to state a plausible claim that Nationstar violated § 1692e by giving a "false representation of the character, amount or legal status of the debt, and a false representation or attempt to collect or attempt to collect a debt" through sending the Loan Workout Letters, Mortgage Statements, or Past Due Letters.  (*See* Doc. 1 ¶¶ 60-62.)  However, Mackiewicz's claim in Count II that Nationstar violated § 1692e by representing in the Past Due Letters that foreclosure proceedings had commenced is not due to be dismissed at this time.  Upon inspection, the Past Due Letters include statements that Nationstar had "completed the first filing notice required to start the foreclosure process" and that "[f]ailure to

bring [the] loan current may result in fees, possibly even foreclosure and the loss of [Mackiewicz's]

home." (Doc. 1-1 at 59, 63.) It is undisputed that the Foreclosure Final Judgment was entered

months prior to the date the Past Due Letters were sent, and the threat of fees and foreclosure in

both letters may plausibly be considered a violation of § 1692e. *See Tamblyn*, 837 F.2d at 448

(quoting *Sunshine Utils. Equip., Inc.*, 421 So. 2d at 1097) ("'The doctrine of merger operates to

extinguish a *cause of action* on which a judgment is based . . . .'").

      In Count III, Mackiewicz avers that Nationstar violated § 1692f of the FDCPA, which

provides that:

> "A debt collector may not use unfair or unconscionable means to collect or attempt
> to collect any debt. Without limiting the generality of the foregoing, the following
> conduct is a violation of this section: (1) The collection of any amount (including
> any interest, fee, charge, or expense incidental to the principal obligation) unless
> such amount is expressly authorized by the agreement creating the debt or permitted
> by law." 15 U.S.C. § 1692f.

15 U.S.C. § 1692f. Mackiewicz alleges that Nationstar placed telephone calls and sent written

communications directly to Mackiewicz regarding the Subject Debt in Nationstar's efforts to

collect amounts not authorized by the Final Judgment. (Doc. 1 ¶¶ 67, 68.) Mackiewicz avers

that "(e)ach telephone call was an unfair or unconscionable attempt to collect a debt that was not

permitted by law in violation of 15 U.S.C. § 1692f because [Mackiewicz] did not give Defendant

consent to contact her and any prior consent was revoked . . . ." (*Id.* ¶ 67.) Additionally,

Mackiewicz argues that Nationstar violated §1692f by sending the Mortgage Statements

"collecting amounts not authorized by the [Foreclosure] Final Judgment . . . ." (*Id.* ¶ 68.)

      In Count III, amongst other allegations, Mackiewicz avers that the Mortgage Statements

"collecting amounts not authorized by the [Foreclosure] Final Judgment were unfair or

unconscionable attempts to collect a debt in violation of 15 U.S.C. § 1692f." (*Id.* ¶ 68.) As

previously discussed, the Mortgage did not merge into the Foreclosure Final Judgment and

Mackiewicz otherwise fails to present sufficient factual allegations to support a plausible claim under §1692f based on Mackiewicz's receipt of the Mortgage Statements.  As such, Mackiewicz's claims in Count III shall be dismissed to the extent they rely on Nationstar's delivery and Mackiewicz's receipt of the Mortgage Statements.  In so finding, the Court notes that the Foreclosure Final Judgment provides that the Subject Property shall be sold unless the total amount listed in the Foreclosure Final Judgment and "all costs accrued subsequent to [the Foreclosure Final Judgment]" are paid.  (*See* 1-1 at 39.)  Additionally, the Foreclosure Final Judgment references the Mortgage lien and provides that the total amount listed shall bear interest at the rate of 6.15% per diem from February 11, 2014 to September 11, 2014 and, subsequently, at the rate established by Florida Statute.  (*Id.*)

Although a significant portion of Mackiewicz's claims in Count II and Count III are due to be dismissed, Mackiewicz's claims that Nationstar violated § 1692e and § 1692f through the making of telephone calls are not subject to dismissal at this time.  Nationstar's purported representations via telephone that "less than the accelerated amount and/or Final Judgment was due" plausibly violated § 1692e, and Nationstar's efforts to contact Mackiewicz via telephone after receipt of the Cease Contact Demand may be deemed "unfair or unconscionable" for purposes of § 1692f liability.  Although the content of Nationstar's telephonic communications with Mackiewicz is not entirely clear, making all reasonable inferences in Mackiewicz's favor and taking Mackiewicz's factual allegations as true, the Court finds that Mackiewicz includes sufficient factual allegations in the Complaint to support plausible FDCPA claims in Count II and Count III based on the telephone calls.

In Count IV, Mackiewicz alleges that Nationstar violated § 1692c(a)(2) of the FDCPA, which states in relevant part:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from a debt collector or unless the attorney consent to direct communication with the consumer[.]

15 U.S.C. § 1692c(a).  Mackiewicz alleges that Nationstar violated §1692c(a)(2) by placing telephone calls and sending letters and the Mortgage Statements directly to Mackiewicz after receiving instruction from Mackiewicz's counsel to cease communications with Mackiewicz, despite Nationstar having access to the name and address of Mackiewicz's counsel.  (Doc. 1 ¶¶ 72-76.)  Mackiewicz avers that she received hundreds of said telephone calls and "13 letters and mortgage statements" directly from Nationstar.  (*Id.* ¶¶ 73, 75.)  Mackiewicz's factual allegations and the undisputed fact that Nationstar communicated directly with Mackiewicz after receipt of the Cease Contact Demand are mostly sufficient to survive Nationstar's request for dismissal of Count IV.  However, the portion of Count IV that relies on Mackiewicz's assertion that Nationstar violated § 1692c(a)(2) by sending the Insurance Letter and the Insurance Proof Letter is subject to dismissal based on Nationstar's immunization from liability pursuant to 12 C.F.R. 1024.37, the CFPB Ruling, and § 1692k(e) of the FDCPA.  With the exception of Mackiewicz's averment that Nationstar violated § 1692c(a)(2) through sending the Insurance Letter and the Insurance Proof Letter, however, Mackiewicz's claims in Count IV will not be dismissed.

*C. FCCPA Claims: Count V and Count VI*

In Count V of the Complaint, Mackiewicz alleges that Nationstar violated section 559.72(9) of the FCCPA by sending the Mortgage Statements directly to Mackiewicz claiming entitlement to expenses after entry of the Foreclosure Final Judgment that were not authorized by the Foreclosure Final Judgment and entitlement to an interest rate in excess of that allowed by the

Foreclosure Final Judgment.  (Doc. 1 ¶¶ 80-81.)  Additionally, Mackiewicz avers that Nationstar sent letters to Mackiewicz asserting that foreclosure proceedings had been started, although Nationstar was aware of the entry of the Foreclosure Final Judgment.  (*Id.* ¶ 82.)  In Count VI, Mackiewicz states that Nationstar violated section 559.72(18) of the FCCPA by contacting Mackiewicz via telephone after receipt of the Cease Contact Demand, despite Nationstar's knowledge that Mackiewicz was represented by counsel and Nationstar's ability to ascertain such counsel's name and address.  (*Id.* ¶ 86.)  Further, Mackiewicz avers that "[e]ach of the 13 written communications from [Nationstar] to [Mackiewicz] were sent when [Nationstar] knew that [Mackiewicz] had counsel, knew of the Cease Contact Demand[,] and . . . knew, or could readily ascertain such counsel[']s name and address."  (*Id.* ¶ 87.)

Section 559.72(9) of the FCCPA provides that, "[i]n collecting consumer debts, no person shall[] . . . [][c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows the right does not exist." Fla. Stat. § 559.72(9).  In order to establish a violation of section 559.72(9) of the FCCPA, "'it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist.'" *Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367, 1372-73 (S.D. Fla. 2011) (quoting *Pollock v. Bay Area Credit Serv., LLC*, No. 08-61101-Civ, 2009 WL 2475167, at *9 (S.D. Fla. Aug. 13, 2009)).  As set forth in section 559.72(18) of the FCCPA, "[i]n collecting consumer debts, no person shall[] . . .[][c]ommunicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates

the communication." Fla. Stat. § 559.72(18).

In Count V, Mackiewicz avers that Nationstar violated section 559.72(9) by sending Mortgage Statements that included an interest rate and expenses that were purportedly not authorized by the Final Judgment and that Mackiewicz knew such amounts were not legitimate and that the asserted legal right did not exist.   (Doc. 1 ¶¶ 80-81.)   However, Nationstar's inclusion of such amounts in the Mortgage Statements sent to Mackiewicz after entry of the Foreclosure Final Judgment but before transfer of the title of certificate on the Subject Property or satisfaction of the judgment is not sufficient grounds on which to base a claim that Nationstar violated section 559.72(9).   *See* discussion *supra* at 11-12; *see also Wright v. Bush Ross, P.A.*, No. 8:07-cv-1885-T-23MAP, 2008 WL 190466, at *2 (M.D. Fla. Jan. 18, 2008) ("[C]ourts interpreting the FCCPA give 'due consideration and great weight' to federal court interpretations of the FDCPA."); Fla. Stat. § 559.77(5) ("In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the [FDCPA].")   Accordingly, Count V will be dismissed to the extent Mackiewicz's claims are based on allegations that Nationstar violated section 559.72(9) by sending the Mortgage Statements.   However, Mackiewicz's claim that Nationstar violated section 559.72(9) by representing in the Past Due Letters that foreclosure proceedings had commenced is not due to be dismissed, as such a representation may plausibly qualify as an assertion of the existence of Nationstar's right to commence foreclosure proceedings on the Subject Property despite knowledge of the prior entry of the Foreclosure Final Judgment.

In Count VI, which is largely analogous to Mackiewicz's FDCPA claims in Count IV, Mackiewicz avers that Nationstar violated § 559.72(18) by making telephone calls and sending each of the thirteen (13) written communications to Mackiewicz with knowledge that Mackiewicz

had counsel and after receipt of the Cease Contact Demand.   With the exception of Mackiewicz's claims regarding Nationstar's liability for sending the Insurance Letter and the Insurance Proof Letter, Mackiewicz includes sufficient factual allegations concerning Nationstar's communications with Mackiewicz to state a claim under § 559.72(18).   *See* discussion *supra* at 15-16; *see also Wright*, 2008 WL 190466, at *2; Fla. Stat. § 559.7(5).

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** and **ADJUDGED** that Defendant Nationstar Mortgage, LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 16) is **GRANTED in part** and **DENIED in part** as follows:

1. Nationstar Mortgage, LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 16) is **GRANTED** as follows:

> A. Count II is **DISMISSED** to the extent that Mackiewicz claims that Nationstar violated § 1692e of the FDCPA by including a "false representation of the character, amount or legal status of the debt, and a false representation or attempt to collect or attempt to collect a debt" through sending the Loan Workout Letters, Mortgage Statements, or Past Due Letters.

> B. Count III is **DISMISSED** to the extent that Mackiewicz claims that Nationstar violated § 1692f of the FDCPA by sending the Mortgage Statements to Mackiewicz.

> C. Count IV is **DISMISSED** to the extent that Mackiewicz claims that Nationstar violated § 1692c(a)(2) of the FDCPA by sending the Insurance Letter and Insurance Proof Letter to Mackiewicz.

D. Count V is **DISMISSED** to the extent that Mackiewicz claims that Nationstar violated section 559.72(9) of the FCCPA by sending the Mortgage Statements to Mackiewicz.

E. Count VI is **DISMISSED** to the extent that Mackiewicz claims that Nationstar violated section 559.72(18) of the FCCPA by sending the Insurance Letter and the Insurance Proof Letter to Mackiewicz.

2. In all other respects, Nationstar Mortgage, LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 16) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on this ___ day of June, 2015.

**G. KENDALL SHARP**
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record