UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. 6:15-cv-00465-GKS-GJK

ALETHA K. MACKIEWICZ,

Plaintiff,

vs.

NATIONSTAR MORTGAGE, LLC,

Defendant.

_______________________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT NATIONSTAR MORTGAGE LLC'S MOTION TO STAY PROCEEDINGS PENDING RULING BY UNITED STATES CIRCUIT COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA AND THE SUPREME COURT WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Aletha K. Mackiewicz, through the undersigned counsel, hereby serves her Response in Opposition to Defendant Nationstar Mortgage LLC's Motion to Stay Proceedings. (D.E. 27). Below we explain why Nationstar's motion should be denied.

## I
## FACTS

Plaintiff Mackiewicz is an elderly woman who has alleged that Nationstar made hundreds of debt collection telephone calls to her cellular telephone while Nationstar was in active litigation with her regarding the subject debt and while Nationstar knew that Mackiewicz was represented by counsel who had sent clear notice to Nationstar to cease contact with her. She also alleged that after Nationstar had received her counsel's notice to cease contact with her,

Nationstar sent her periodic billing statements and emails that were illegal attempts to collect a debt.

Mackiewicz alleged that Nationstar had violated the Telephone Consumer Protection Act ("TCPA") 47 USC § 227, et. seq., the federal Fair Debt Collection Practices Act ("FDCPA"), 15 USC § 1692, et seq., and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, et seq. On June 25, 2015 this court issued a twenty page opinion on Nationstar's 12(b)(6) motion which addressed Mackiewicz's claims under the FDCPA and FCCPA (counts 2 - 6, inclusive). (D.E. 21) This Court allowed Mackiewicz to proceed forward with her FDCPA and FCCPA claims, albeit limited as to some alleged facts.

Nationstar seeks a stay of this proceeding, contending that this entire action may be moot because the case of *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015) is before the U.S. Supreme Court on the issue of whether Congress conferred Article III standing on a plaintiff who alleged only statutory damages. (Motion to Stay, page 3) Damages are alleged in count 1 under the TCPA for statutory damages as well as injunctive relief to enjoin the violations. Counts 2, 3 and 4 allege actual and statutory damages pursuant to the FDCPA. Count 5 under Fla. Stat. § 559.72(9) alleges actual damages, statutory damages, declaratory relief and injunctive relief. Count 6 under Fla. Stat. § 559.72(18) alleges general damages, special damages, statutory damages, punitive damages, declaratory relief and injunctive relief.

Nationstar also contends that the definition of an "automatic telephone dialing system" (aka "autodialer") as provided by the TCPA and the FCC's July 10, 2015 Order is under review in the D.C. Circuit in *ACA International v. Federal Communications Commission*, Case No. 15-1211 and that the result of a ruling in that case will be either to extinguish Mackiewicz's

claims or it will define the issues and scope of discovery. (Motion to Stay, p. 2) In addition to pleading that Nationstar used an autodialer, Mackiewicz also pled that Nationstar used an artificial or prerecorded voice in the beginning of each call. (Complaint, para. 53) The TCPA defines an autodialer as the use of equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. 47 USC 227(a)(1) In 2008 the FCC interpreted the definition to include a predictive dialer. A a predictive dialer is:

> Equipment that dials numbers and, when certain computer software is attached, also assisted telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order ... [i]n most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at rate to ensure that when a consumer answers the phone, a sales person is available to take the call.

(See *Conglio v. Bank of America*, 8:14-cv-01628; 2014 WL 6882294 (M.D.Fla., 12/4/2014), *also see*, 2008 TCPA Order 23 FCC Rcd. at 566, para. 12, *and see* 2003 TCPA Order, 18 FCC RCD. AT 14091, PARA. 131).

In the July 10, 2015 the FCC recognized the ever expanding way that technologies can be strung together across the internet to reach vast numbers of consumers cellular telephones, such as by using cloud-based dialing options, texts and smartphone apps. (FCC 15-72 Order, 7/10/15) Although a device may not have the present capacity to store or produce telephone numbers, if it

has the ability to access other devices that do have that capability then it falls within the definition of an autodialer. (FCC 15-72 Order, 7/10/15) The FCC stated: [1]

> We agree with commenters who argue that the TCPA's use of "capacity" does not exempt equipment that lacks the "present ability" to dial randomly or sequentially. We agree that Congress intended a broad definition of autodialer, and that the Commission has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the "capacity" to dial random and sequential numbers, rather than the "present ability" to do so. Hence, any equipment that has the requisite "capacity" is an autodialer and is therefore subject to the TCPA.

(FCC 15-72 Order, 7/10/15)

---

[1] In explaining its reasoning for defining the the term "capacity" the FCC stated:

> To reiterate and simplify the relevant portions of the TCPA, and as a guide to the issues we address below: if a caller uses an autodialer or prerecorded message to make a non-emergency call to a wireless phone, the caller must have obtained the consumer's prior express consent or face liability for violating the TCPA.
>
> . . . .
>
> We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. We also reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason. We also find that callers cannot avoid obtaining consent by dividing ownership of pieces of dialing equipment that work in concert among multiple entities. (cites omitted)
>
> 11. Glide, PACE, and TextMe42 ask whether dialing equipment is an autodialer under the TCPA when it does not have the "current capacity" or "present ability" to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made. Glide asks the Commission to clarify that "equipment used to make a call is an autodialer subject to the TCPA only if it is capable of storing or generating sequential or randomized numbers at the time of the call." PACE seeks clarification that a dialing system's "capacity" is "limited to what it is capable of doing, without further modification, at the time the call is placed." TextMe asks the Commission to clarify that "capacity" "encompasses only equipment that, at the time of use, could in fact perform the functions described in the TCPA without human intervention and without first being technologically altered." (cites omitted)

Discovery is still pending and Plaintiff has set the deposition of Nationstar's corporate representative for November 19, 2015 in Texas.

## II
## ARGUMENT

### *A. Stay based on Spokeo - Whether there is Article III standing solely for statutory damages*

In *Speer v. Whole Foods Market Group, Inc.*, 8:14-cv-03035-RAL-TBM (MD, Fla., 4/29/15), Judge Lazzara was presented with the same issue - to grant a stay of the proceedings because the Supreme Court granted certiorari in *Spokeo*. Judge Lazzara denied the motion for a stay and stated:

> So, too, in this case, this Court will assign no presidential significance to the fact that the Supreme Court has granted certiorari in a case in which the Defendant claims presents an issue which will ultimately affect the outcome of whether the Plaintiff has Article III standing to bring this lawsuit not only on his own behalf but on behalf of those similarly situated to him. As in Schwab, this Court has no way of divining whether the Supreme Court will decide the Spokeo case in such a manner as to benefit the Defendant's position with regard to the Plaintiff's lack of standing to pursue this case for himself and those similarly situated. The Court concludes, therefore, consistent with established Eleventh Circuit precedent that a grant of certiorari by the Supreme Court does not change the law and does not constitute new law, that a stay of these proceedings to await a decision from the Supreme Court in Spokeo is not warranted. (citing to Rutherford v. McDonough, 466 F. 3d 970, 977 (11th Cir. 2006) and Ritter v. Thigpin, 828 F. 2d 662, 665-66 (11th Cir. 1987)

Further, although the TCPA count only alleges statutory damages, the FDCPA counts (2, 3, 4) allege both actual and statutory damages, pursuant to the FDCPA, count 5 under the FCCPA alleges actual damages, statutory damages, declaratory relief and injunctive relief, and count 6 under the FCCPA alleges general damages, special damages, statutory damages, punitive damages, declaratory relief and injunctive relief. General damages include mental anguish and

suffering. *Getz v. Robert Welch, Inc.* 418 U.S. 323, 350, 94 S. Ct. 2997, 3013, 41 L. Ed. 2d 789 (1974) General damages are damages that the law presumes actually and necessarily result from the alleged wrong or breach. *Augustine v. S. Bell Tel. & Tel. Co.*, 91 So. 2d 320, 323 (Fla. 1956) Ms. Mackiewicz is an elderly woman who received a large number of debt collection calls to her cell phone as well as debt collection letters and emails after her counsel notified Nationstar to not contact her. In addition to the requested declaratory and injunctive relief, suffering mental anguish is not trivial, and it is the natural result of that illegal debt collection conduct. Regardless of the issue in *Spokeo*, Ms. Mackiewicz has alleged sufficient harm to confer Article III standing upon this Court.

**B. *Stay based on ACA Int'l. v. Federal Communications Comm'n, 15-1211***
***Whether the possibility that the definition of an autodialer may change warrants stay***

The same reasoning for denying the stay in *Speer v. Whole Foods Market Group, Inc.*, 8:14-cv-03035-RAL-TBM (MD, Fla., 4/29/15), applies here. Additionally, any ruling in *ACA International* regarding the definition of an autodialer would not extinguish Ms. Mackiewicz's claims because the TCPA provides two distinct ways in which the act is violated, both of which were pled by Ms. Mackiewicz - by using an autodialer or by using an artificial or prerecorded voice in the beginning of each call.

Further, the TCPA defines an automatic dialer as equipment having the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers. We, Ms. Mackiewicz's counsel, had not conceived that Nationstar may have used a cloud based technology to generate its phone calls to Ms. Mackiewicz, so our

deposition notice and our intent in setting the deposition of Nationstar's corporate representative was to seek discovery of information about Nationstar's automatic telephone dialing system as defined by the TCPA and as defined by the FCC's previous definition of a predictive dialer as explained in the FCC's 2008 TCPA Order 23 and as referenced in *Conglio v. Bank of America*, 8:14-cv-01628; 2014 WL 6882294 (M.D.Fla., 12/4/2014).[2] Nationstar admits that the *ACA International* petition does not seek to change this definition, rather, it only seeks to change the 2015 definition of an autodialer, therefore, the 2008 FCC definition is still binding. (Motion to Stay, p. 7)

If the Court has concerns that the Court in *ACA International* may alter the definition of an autodialer and that this possibility raises legitimate concerns in this case, this Court could remedy the problem merely by limiting the discovery sought by Ms. Mackiewicz to the FCC's 2008 definition of an autodialer.

## III
## CONCLUSION

For the reasons described above, Nationstar Mortgage LLC's motion to stay proceedings should be denied, or alternatively, a limiting Order issue that our deposition shall proceed under the 2008 FCC definition of an autodialer.

/s/ George M. Gingo
George M. Gingo, FBN 879533
James E. Orth, Jr. FBN 75941
400 Orange Street
Titusville, FL 32796
321-264-9624 Office

[2] Copy of Deposition Notice and Subpoena Duces Tecum attached as Exhibit A.

866-311-9573 Fax
jamesorthlaw@gmail.com
gingo.george@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2015, I electronically filed this document with the Clerk of the Court for the United States District Court for the Middle District, Orlando Division, by using the CM/ECF system. A copy of this document is also being served this day on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF to:

Sara F. Holladay-Tobias
Emily Y. Rottmann
C. H. Houston III
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
sfhollad@mcguirewoods.com
erottmann@mcguirewoods.com
chouston@mcguirewoods.com

/s/ George M. Gingo
George M. Gingo, FBN 879533

# EXHIBIT A